**EXHIBIT 01-6**

**Docket and Complaint**

*Mindy Collette v. DeMert Brands, LLC,* **Case # 1:22-cv-09438-VSB**

**United States District Court for the Southern District of New York**

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:22-cv-09438-VSB

Collette v. Demert Brands, LLC        Date Filed: 11/03/2022
Assigned to: Judge Vernon S. Broderick      Jury Demand: Plaintiff
Demand: $5,000,000           Nature of Suit: 370 Other Fraud
Cause: 28:1332 Diversity Action       Jurisdiction: Diversity

**Plaintiff**

**Mindy Collette**           represented by   **Russell Busch**
*individually and on behalf of all others*        Milberg Coleman Bryson Phillips Grossman
*similarly situated*                   PLLC
                                      800 S. Gay Street, Suite 1100
                                      Knoxville, TN 37929
                                      630-796-0903
                                      Email: rbusch@milberg.com
                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Demert Brands, LLC**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/03/2022 | 1 | COMPLAINT against Demert Brands, LLC. (Filing Fee $ 402.00, Receipt Number ANYSDC-26917204)Document filed by Mindy Collette..(Busch, Russell) (Entered: 11/03/2022) |
| 11/03/2022 | 2 | CIVIL COVER SHEET filed..(Busch, Russell) (Entered: 11/03/2022) |
| 11/03/2022 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to DeMert Brands, LLC, re: 1 Complaint. Document filed by Mindy Collette..(Busch, Russell) (Entered: 11/03/2022) |
| 11/04/2022 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Vernon S. Broderick. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(jgo) (Entered: 11/04/2022) |
| 11/04/2022 | | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (jgo) (Entered: 11/04/2022) |
| 11/04/2022 | | Case Designated ECF. (jgo) (Entered: 11/04/2022) |

| 11/04/2022 | 4 | ELECTRONIC SUMMONS ISSUED as to Demert Brands, LLC..(jgo) (Entered: 11/04/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/22/2022 10:12:03 | | | |
| **PACER Login:** | carltonf | **Client Code:** | 99998-99991-2309 |
| **Description:** | Docket Report | **Search Criteria:** | 1:22-cv-09438-VSB |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MINDY COLLETTE, individually and
on behalf of all others similarly situated,

        Plaintiff,

   v.

DEMERT BRANDS, LLC,

        Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

      Plaintiff Mindy Collette ("Plaintiff") brings this Class Action Complaint against DeMert Brands, LLC ("DeMert," "NYM," or "Defendant"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys:

### <u>NATURE OF THE ACTION</u>

      1.     This is a civil class action brought by Plaintiff on behalf of all consumers who purchased Defendant's Not Your Mother's® brand of dry shampoo (the "NYM Dry Shampoos" or the "Products"[1]) for normal, household use. The Products are defective because they contain

---

[1] This action concerns multiple varieties of Not Your Mother's dry shampoo products, including: Beach Babe Texturizing Dry Shampoo Toasted Coconut, Clean Freak Refreshing Dry Shampoo, Original or Unscented, Triple Threat Brunette Dry Shampoo Hint of Brunette Tinted Powder, Plump for Joy Body Building Dry Shampoo Orange Mango, or Blonde Moment Dry Shampoo Hint of Blonde Tinted Powder. As alleged herein, Defendant's Products contain the harmful carcinogen benzene. Accordingly, discovery will reveal the exhaustive list of substantially similar Products that are included in this action.

dangerously high levels of the chemical benzene, a known carcinogen that offers no therapeutic shampoo benefit.

2.     Over the course of several years, Defendant gained the trust of consumers with its NYM product line, which Defendant bills as a "superior quality hair care line for tweens, teens, and young adults."[2] Thus, consumers reasonably believe that Defendant's products, including the defective Products at issue, are made with quality materials, and can be used safely, as intended.

3.     Defendant formulates, designs, manufactures, markets, advertises, distributes, and sells the Products to consumers throughout the United States, including in the State of New York.

4.     Defendant distributes and sells the Products through various authorized retailers in store and online.

5.     Defendant represents that the Products are safe for their intended use. In reality, the Products contain significant concentrations of the toxic chemical benzene.

6.     Benzene is a carcinogen known to cause cancer in humans. Long-term exposure additionally causes harmful effects on the bone marrow; a decrease in red blood cells leading to anemia; and excessive bleeding that can affect the immune system, leading to an increased chance of infection. According to FDA guidance, **there is no safe level of benzene**, and thus it "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."[3]

7.     According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, **skin absorption**, ingestion, **skin** and/or eye

---

[2] https://www.demertbrands.com/about/ (last visited Nov. 3, 2022).

[3] FDA, Q3C – 2017 Tables and List Guidance for Industry. Available at https://www.fda.gov/media/71737/download.

contact."[4]  Skin absorption is particularly concerning for the Products-- which are designed to be applied to the scalp—as there have been multiple FDA studies showing that structurally similar chemicals in sunscreen products are found in the blood at high levels after application to exposed skin.[5]

8.      FDA guidance provides that "if [benzene's] use is unavoidable in order to produce a drug product with a significant therapeutic advance, then [its] levels should be restricted" to 2 parts per million ("ppm").  *Id.*

9.      The use of benzene in the Products is demonstrably avoidable.  Feasible alternative formulations, designs, and materials were available to Defendant at the time it formulated, designed, and manufactured the Products.  Critically, such alternative formulations and designs were and are used by other dry shampoo manufacturers to produce and sell non-defective dry shampoos.

10.     In any event, the Products' benzene concentration far exceed even this 2 ppm ceiling.  The NYM Dry Shampoos tested had benzene concentrations ranging from 4.46ppm to **158 ppm,** nearly **80 times** the FDA concentration limit of 2 ppm.

11.     The Products' benzene contamination was not disclosed to the consumer on the product label, the ingredients list, or otherwise.

12.     Plaintiff seek damages and equitable remedies for herself, and for the proposed Class.

---

[4] National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html (Last Accessed November 3, 2022)
[5] https://www.fda.gov/news-events/fda-voices/shedding-more-light-sunscreen-absorption (Last Accessed November 3, 2022)

## PARTIES

### A. Plaintiff

13.     Plaintiff Mindy Collette is a resident and citizen of the Bronx, New York who purchased and used the Products in New York within the relevant time period.

### B. Defendant

14.     Defendant DeMert Brands, LLC is a Florida limited liability company headquartered at 15402 N. Nebraska Ave. #102, Lutz, Florida 33549.  DeMert launched the Not Your Mother's® brand in 2010, and at all times relevant to this lawsuit, Defendant  has owned, advertised, marketed, manufactured, distributed, and sold the Not Your Mother's® brand throughout the United States and the State of New York. The Products, including the adulterated Products purchased by Plaintiff and members of the proposed Classes, are available at retail stores throughout New York and the United States.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more proposed Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

16.     This Court has personal jurisdiction over Defendant because it has substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, because Defendant placed the Products into the stream of commerce directed at

this District, and because Defendant purposely availed itself of the laws and markets of the United States and the State of New York.

17.    In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendant transacts business in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

### A.  DeMert's History and the Not Your Mother's Brand

18.    According to Defendant, DeMert Brands is "considered a legacy brand by the professional beauty industry" with over 50 years of history in the industry.[6]  On its website, DeMert declares that "the quality of our goods is truly our number one priority.  We want all of our customers to feel like they are getting the highest quality beaty care products . . . ."[7]

19.    DeMert owns 12 product lines with over 125 products which are sold internationally, including in 25,000 stores in the United States.[8]

20.    DeMert's products, including the NYM Dry Shampoos, are manufactured, distributed, and sold throughout the United States, including the State of New York.

21.    DeMert markets and sells dry shampoo as part of its Not Your Mother's product line. DeMert developed the Not Your Mother's brand starting in 2008 and has sold NYM Dry Shampoo products for the past 12 years.[9]

---

[6] *Available at* https://www.demertbrands.com/about/ (last visited Nov. 3, 2022).

[7] *Id.*

[8] *Id.*

[9] *Id.*

22.     DeMert's website emphasizes that "Not Your Mother's Haircare reimagines your haircare products building in benefits you didn't know were possible.  Not Your Mother's transform[s] salon treatments and the latest haircare trends into at-home realities.  **We source clean, quality ingredients** that don't quit and are cruelty-free."[10]

### B.  The Products

23.     Dry shampoo is a product designed to absorb the dirt, oil, and grease of the scalp without washing it.[11]

24.     Dry shampoos are typically administered from an aerosol can and made with a base of alcohol or starch.  When applied to the hair, the dry shampoo soaks up the oil and grease, making it look cleaner.

25.     The U.S. Food and Drug Administration ("FDA") classifies and regulates shampoos, including dry shampoos like the Products, as cosmetics.

26.     Due to the substantial harm to humans caused by exposure to chemicals such as benzene, companies have been founded with the specific goal of preventing defective products, containing said harmful chemicals, from reaching consumers. Valisure is a company with a core mission "to independently check the chemical composition of medications and healthcare products before they reach consumers."[12]  In order to do this, Valisure operates an analytical laboratory registered with the FDA and accredited by the International Organization for Standardization.

---

[10] *Available at* https://www.demertbrands.com/not-your-mothers-haircare/ (Last Accessed November 3, 2022)

[11] https://www.webmd.com/beauty/what-is-dry-shampoo (Last Accessed November 3, 2022)

[12]     Valisure.  Valisure Detects Benzene in Body Spray Products (November 4, 2021) (https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-body-spray-products-3/)

27.     Valisure has tested for specific chemical qualities in numerous types of products, such as N-Nitrosodimethylamine ("NDMA") in ranitidine, NDMA in metformin, benzene in hand sanitizers, benzene in aerosol deodorants and antiperspirants, and benzene in sun care products. Each time, Valisure's detection of benzene and other carcinogens has been independently confirmed by industry and led to recalls by manufacturers over the subject products.

28.     On October 31, 2022, Valisure petitioned the FDA to address the dangerous levels of benzene in the Products and other dry shampoos based upon rigorous testing the organization had conducted for a number of dry shampoo products.[13]  Valisure included the extensive results of these tests with its petition to the FDA.[14]

29.     In testing, Valisure found average concentrations of benzene above the FDA concentration limit of 2 ppm in **14 lots** of NYM Dry Shampoos.  Valisure's test results have already been confirmed by recalls of several dry shampoo products manufactured by Procter & Gamble and Unilever which were found to contain benzene.  In contrast, Defendant DeMert has to date refused to voluntarily recall its Products adulterated with the dangerous carcinogen benzene.

30.     In particular, Valisure found benzene concentrations between two and **eighty times** higher than the FDA concentration limit.

---

[13]     https://assets-global.website-files.com/6215052733f8bb8fea016220/6360f7f49903987d8f4f4309_Valisure%20FDA%20Citizen%20Petition%20on%20Benzene%20in%20Dry%20Shampoo%20Products_103122.pdf (last visited Nov. 3, 2022).

[14]     *Id.*

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|---|---|---|---|---|
| Not Your Mother's | 688047130500 | 21090 | Beach Babe Texturizing Shampoo – Toasted Coconut – 7 oz | 158 |
| Not Your Mother's | 688047130098 | 21145 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz | 143 |
| Not Your Mother's | 688047130296 | 21070 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 69.6 |
| Not Your Mother's | 688047130975 | 20356 | Triple Threat Brunette Dry Shampoo - Hint of Brunette Tinted Powder - 7 oz | 27.6 |
| Not Your Mother's | 688047130296 | 21188 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 9.41 |
| Not Your Mother's | 688047130517 | 21141 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 132 |

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|-------|-----|-----|-------------|-----------------------------------|
| Not Your Mother's | 688047130500 | 21124 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 85.4 |
| Not Your Mother's | 688047130500 | 21179 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 73.1 |
| Not Your Mother's | 688047130517 | 21181 | Plump for Joy Body Building Dry Shampoo - Orange Mango - 7 oz | 55.3 |
| Not Your Mother's | 688047130098 | 20280 | Clean Freak Refreshing Dry Shampoo - Original - 7 oz | 51.2 |
| Not Your Mother's | 688047130500 | 21063 | Beach Babe Texturizing Dry Shampoo - Toasted Coconut - 7 oz | 40.1 |
| Not Your Mother's | 688047130296 | 21009 | Clean Freak Refreshing Dry Shampoo - Unscented - 7 oz | 39.5 |

| Brand | UPC | Lot | Description | First Spray Benzene Concentration |
|---|---|---|---|---|
| Not Your Mother's | 688047130951 | 20353 | Blonde Moment Dry Shampoo - Hint of Blonde Tinted Powder - 7 oz | 22.9 |
| Not Your Mother's | 688047132290 | 21194 | Clean Freak Refreshing Dry Shampoo - Original - 1.6 oz | 4.46 |

**C.  Danger Posed by the Products**

31.     The carcinogenic properties of benzene are well documented, as noted be the Centers for Disease Control and Prevention ("CDC").[15]

32.     The U.S. Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans. Long-term exposure to high levels of benzene can cause leukemia, a cancer of the blood-forming organs.

33.     Additionally, long-term exposure to benzene causes harmful effects to bone marrow and can cause a decrease in red blood cells, leading to anemia.  It can also cause excessive bleeding and can affect the immune system, increasing the chance for infection.

34.     Due to these significant health risks, the World Health Organization and the International Agency for Research on Cancer classify benzene as a Group 1 compound that is "carcinogenic to humans."[16]

---

[15] *See* CDC, Facts About Benzene (2018),
https://emergency.cdc.gov/agent/benzene/basics/facts.asp.
[16] https://www.who.int/water_sanitation_health/dwq/chemicals/benzenesum.pdf (last visited Nov. 2, 2022).

35.     In addition to the risk of developing cancer, "[d]irect exposure of the eyes, skin, or lungs to benzene can cause tissue injury and irritation."[17]

36.     According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, **skin absorption**, ingestion, **skin** and/or eye contact."[18]  The Products at issue here are applied to the scalp, i.e., the skin on the head.

37.     The FDA classifies Benzene as a Class 1 compound.[19]  According to FDA guidance: "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, and drug products, because of their unacceptable toxicity or their deleterious environmental effect."[20]  The FDA concentration limit for benzene is 2 ppm, a fraction of the benzene concentration found in the Products.[21]

**D.  Defendant DeMert's Representations**

38.     Defendant makes a significant number of representations regarding the quality and safety of the Products on their website. DeMert describes the Not Your Mother's® line as "a superior quality hair care line for tweens, teens and young adults" and promises that "[a]t DeMert Brands the quality of our goods is truly our number one priority."[22] Although the Products were found to contain benzene concentration that far exceed the FDA limit, NYM does not list benzene

---

[17] Centers for Disease Control and Prevention, Facts About Benzene, https://emergency.cdc.gov/agent/benzene/basics/facts.asp.

[18]     National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html.

[19]     https://www.fda.gov/media/71737/download (last visited Nov. 3, 2022).

[20]     *Id.*

[21]     *Id.*

[22]     https://www.demertbrands.com/about/ (last visited Nov. 2, 2022).

among the active or inactive ingredients anywhere on its website,[23] and nothing on the Products'

labels otherwise insinuate, state, or warn that the Products contain benzene:

 

24

---

[23]    *See generally* https://notyourmothers.com/collections/shop-all/products/plump-for-joy-dry-shampoo (last visited Nov. 2, 2022); https://notyourmothers.com/collections/shop-all/products/triple-threat-brunette-dry-shampoo (last visited Nov. 2, 2022); https://notyourmothers.com/collections/shop-all/products/beach-babe-dry-shampoo (last visited Nov. 2, 2022); https://notyourmothers.com/collections/shop-all/products/clean-freak-unscented-dry-shampoo (last visited Nov. 2, 2022); https://notyourmothers.com/collections/shop-all/products/original-dry-shampoo (last visited Nov. 2, 2022); https://notyourmothers.com/collections/shop-all/products/blonde-moment-dry-shampoo (last visited Nov. 2, 2022).

[24]    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Beach-Babe-Refreshing-Dry-Shampoo-Spray-7-oz/130088018 (last visited Nov. 3, 2022).





Hold can 8-10 inches away and spray onto roots. Massage thoroughly with fingertips and brush through. Style as usual.

**INGREDIENTS:** ISOBUTANE, PROPANE, SD ALCOHOL 40-B, ALUMINUM STARCH OCTENYLSUCCINATE, ISOPROPYL MYRISTATE, SILICA, FRAGRANCE (PARFUM).

**WARNING: EXTREMELY FLAMMABLE.** Do not spray on a naked flame or any incandescent materials. Keep away from sources of ignition. No smoking. Pressurized dispenser. Protect from sunlight and do not expose to temeratures above 120° F (50° C). Do not pierce or burn even after use. Avoid spraying in eyes. Avoid spraying in close contact with unprotected skin. Use only as directed. Intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal. **KEEP OUT OF REACH FROM CHILDREN.**

330mL (198g) **EXTREMELY FLAMMABLE**

nymbrands.com
Dist. by DeMert Brands, Inc.
Lutz, FL 33549.
1-813-903-0434
Dateline Imports P/L,
Banksmeadow, NSW, Australia.

25

---

25    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Original-7-oz/16777427 (last visited Nov. 3, 2022).



---

26      *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Clean-Freak-Refreshing-Dry-Shampoo-Spray-Unscented-7-oz/52619225 (last visited Nov. 3, 2022).




27

---





[28]



E.  **Defendant's Products are Adulterated and Illegal to Sell**

39.     Defendant's NYM Dry Shampoo Products are adulterated cosmetics under 21 U.S.C. § 361(a) based upon the presence of benzene.

40.     The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).

---

29    *Available at* https://www.walmart.com/ip/Not-Your-Mother-s-Blonde-Moment-Color-Protection-Dry-Shampoo-7-oz/984267162 (last visited Nov. 3, 2022).

41.     As alleged herein, Defendant has violated the FDCA and the New York General Business Law.

42.     Defendant engaged in fraudulent, unfair, deceptive, misleading, and/or unlawful conduct stemming from its omissions surrounding benzene contamination affecting the Products.

43.     No reasonable consumer, including Plaintiff, would have purchased the Products had they known of the material omissions of material facts regarding the presence of benzene. Accordingly, Plaintiff and the proposed Class suffered injury in fact and lost money as a result of Defendant's misleading representations and omissions and did not receive the benefit-of-the-bargain.

44.     Plaintiff and the Class Members' injuries are underscored by the fact that numerous other products offering the same dry shampoo benefit at comparable prices exist that are not contaminated with benzene.

45.     Plaintiff and the Class may be harmed again because they want to purchase the Products in the future; however, without injunctive relief Plaintiff would not be able to know or trust that Defendant will truthfully and legally label the Products and would likely be misled again.

## PLAINTIFF MINDY COLLETTE'S FACTUAL ALLEGATIONS

46.     Plaintiff Mindy Collette purchased Not Your Mother's Beach Babe Texturizing Dry Shampoo Toasted Coconut on or around June 2021 at an Ulta Beauty Salon located in the Bronx, New York.

47.     Nowhere on the packaging did Defendant disclose that the Product contained benzene at the time of purchase.

48.     When purchasing the Product, Plaintiff Collette reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that

the Product was properly manufactured, free from defects, safe for its intended use, not adulterated

or misbranded, and legal to sell.  Plaintiff Collette relied on these representations and warranties

in deciding to purchase the Product manufactured by Defendant, and these representations and

warranties were part of the basis of the bargain in that, had Plaintiff Collette been aware of the

existence of benzene in the Product, she would not have purchased the Product or would have paid

significantly less.

49.     As a result of Defendant's actions, Plaintiff Collette has incurred damages,

including economic damages.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action individually and as representative of all those similarly

situated pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the below-

defined Classes:

> **National Class:** During the fullest period allowed by law, all persons who
> purchased any of the Products in the United States for personal use and not for
> resale within the United States.
>
> **New York Subclass:** During the fullest period allowed by law, all persons who
> purchased the Products in the State of New York for personal use and not for resale
> within the State of New York.

51.     Members of the classes described are referred to as "Class Members" or members

of the "Class" or "Classes."

52.     The following are excluded from the Classes: (1) any Judge presiding over this

action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which Defendant or its parent has a controlling interest

(as well as current or former employees, officers, and directors); (3) persons who properly execute

and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have

been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and

Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

53.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

54.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all Class Members is impracticable. On information and belief, Class Members number in the thousands to millions. The precise number or identification of members of the Classes are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

55.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes, which predominate over any questions affecting individual members of the Classes. These common questions of law or fact include, but are not limited to, the following:

a)  Whether the Products contained benzene at the time of purchase;

b)  Whether Defendant omitted or failed to disclose material information to Plaintiff and Class Members regarding the Products;

c)  Whether the Products are defectively designed, formulated, and/or manufactured;

d)  Whether Defendant knew or reasonably should have known about the harmful level of benzene in the Products prior to distributing and selling them to Plaintiff and Class Members;

e)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

    f)   Whether Defendant's actions violate the consumer protection statutes invoked herein;

    g)   Whether Defendant breached the implied warranty of merchantability relating to the Products;

    h)   Whether Defendant breached an express warranty to Plaintiff and Class Members;

    i)   Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members;

    j)   Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

    k)   Whether Plaintiff and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

    l)   Whether Plaintiff and the Class Members are entitled to injunctive, declaratory, or other equitable relief.

56. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

57. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as alleged of herein. Further, the damages of each Class Member were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

58. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Classes because she is a member of the Classes and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiff

has also retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

59. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York General Business Law § 349
### (On behalf of the New York Subclass)

60. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

61. The New York General Business Law § 349 ("G B L § 349") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

62. In its sale of goods throughout the State of New York, Defendant conduct business and trade within the meaning of GBL § 349.

63.     Plaintiff and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

64.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Products (i) would not contain dangerously high levels of benzene, and (ii) are generally recognized as safe for human use.  Defendant also materially omitted key facts regarding the true nature of the Products, specifically that the Products contained dangerous levels of benzene, were adulterated, and were unsafe for use as dry shampoo.  Had Plaintiff and members of the New York Subclass been aware the Products contained benzene, they would not have purchased the Products or would have paid significantly less.

65.     The foregoing deceptive acts and practices were directed at consumers.

66.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Products to induce consumers to purchase the same.  No reasonable consumer would knowingly purchase a dry shampoo product that may contain high levels of a known carcinogen.

67.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of GBL § 349.

68.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and used Defendant's Products.

69.     As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they paid a premium price in the amount of the full

purchase price of the Products based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

70.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### Violation Of New York General Business Law § 350
### (On behalf of the New York Subclass)

71.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

72.     The New York General Business Law § 350 ("GBL § 350") prohibits false advertising in the conduct of any business, trade, or commerce.

73.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

74.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of GBL § 350.

75.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed towards consumers.

76.     Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

77.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

78.     Defendant also materially omitted key facts regarding the true nature of the Products, specifically that the Products contained dangerous levels of benzene, were adulterated,

24

and were unsafe for use as dry shampoo.  Had Plaintiff and members of the New York Subclass been apprised of these facts, they would have been aware of them and would not have purchased the Products.

79.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiff and the New York Subclass have suffered and continue to suffer economic injury.

80.     As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages due to said violations because: (a) they paid a premium price in the amount of the full purchase price of the Products based on Defendant's deceptive conduct; and (b) the Products do not have the characteristics, uses, benefits, or qualities as promised.

81.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of the National Class and,**
**alternatively, the New York Subclass)**

82.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

83.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and each member of the Class purchased the Products.

84.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

85.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

86.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Products are safe for their intended use and that they are free from harmful carcinogens such as benzene.

87.     Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

88.     Defendant breached express warranties about the Products and their qualities because Defendant's Products contained the harmful chemical benzene at the time of purchase and the Products did not conform to Defendant's affirmations and promises described above.

89.     Plaintiff and each of the members of the Class would not have purchased the Products had they known the true nature of the harmful chemicals in the Products.

90.     As a result of Defendant's breach of warranty, Plaintiff and each Class Member suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

91.     On November 3, 2022, Plaintiff Collette gave notice to Defendant of its breaches of express warranty described herein.  Plaintiff will amend her Complaint to add claims for monetary damages if Defendant fails to take the necessary corrective actions.

## COUNT IV
### Breach of Implied Warranty
### (On Behalf of the National Class and, alternatively, the New York Subclass)

92.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

93.     Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

94.     The Products are considered "goods" under the relevant laws and Defendant knew or had reason to know of the specific use for which the Products, as goods, were purchased.

26

95.     Defendant entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

96.     The implied warranty of merchantability included with the sale of each Product means that Defendant guaranteed that the Products would be fit for the ordinary purposes for which dry shampoos are used and sold, and were not otherwise injurious to consumers.  The implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant, and Plaintiff and Class Members.

97.     Defendant breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of providing reasonably reliable and safe use for reducing greasiness and otherwise cleaning hair without the need for water because the Products contain benzene, a known and dangerous carcinogen.  Therefore, the Products are not fit for its particular purpose of safely cleaning hair.

98.     Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiff and Class Members.

99.     Privity is nonetheless not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers.  Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements.  Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

100.    Had Plaintiff, Class Members, and the consuming public known that the Products were contaminated with benzene, they would not have purchased the Products or would have paid less for them.

101.     As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer economic damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT V
### Violation of Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the National Class)

102.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

103.     As previously alleged, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over Plaintiff's Magnuson-Moss claim.

104.     The Products are consumer products as defined in 15 U.S.C. § 2301(1).

105.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3) and utilized the Products for personal and household use and not for resale or commercial purposes.

106.     Plaintiff purchased the Products costing more than $5 and her individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

107.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

108.     The federal Magnuson-Moss Warranty Act ("MMWA" or "Act"), 15 U.S.C. §§ 2301-2312, is a consumer protection regime designed to supplement state warranty law.

109.     The MMWA provides a cause of action for breach of warranty, including the violation of express and implied warranty of merchantability, or other violations of the Act. 15 U.S.C. § 2310(d)(1).

110.     Defendant violated the express warranty because despite its representations and omissions regarding the Products to the contrary, the Products contained the harmful carcinogen benzene.

111. In its capacity as warrantor, and by the conduct described herein, any attempt by Defendant to limit the warranties in a manner that it does is not permitted by law.

112. By Defendant's conduct as described herein, Defendant has failed to comply with its obligations under its implied promises, warranties, and representations.

113. Plaintiff and the Class fulfilled their obligations under the express warranties for the Products.

114. As a result of Defendant's breach of warranties, Plaintiff and the Class are entitled to revoke their acceptance of the Products, obtain damages, punitive damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2301.

**COUNT VI**
**Unjust Enrichment**
**(In the Alternative and on Behalf of the National Class**
**and, alternatively, the New York Subclass)**

115. Plaintiff repeats and re-alleges the allegations above as if set forth herein.

116. Plaintiff and the other members of the Class conferred benefits on Defendant by purchasing the Products.

117. Defendant has been unjustly enriched in retaining the revenues derived from the purchase of the Products by Plaintiff and the other members of the Class.

118. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members of the Class because they would have not purchased the Products if Defendant had disclosed that the Products contained the harmful chemical benzene.

119. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Class is unjust and inequitable, Defendant must pay

restitution to Plaintiff and the other members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT VII
### Medical Monitoring
### (On Behalf of the National Class and,
### alternatively, the New York Subclass)

120.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

121.    As a proximate result of Defendant's acts and omissions, Plaintiff and Class Members are at a significantly increased risk of developing cancer above the normal base-level risk.

122.    As alleged above, Defendant's Products were contaminated with benzene, a known human carcinogen.

123.    Plaintiff and Class Members may not develop cancer for many years.

124.    Plaintiff and Class Members are at a significantly increased risk as they used Defendant's Products for extended periods of time, and as a result were exposed to a contaminant by having their skin absorb the Products.

125.    Based upon the internal and external investigations now made public, Plaintiff and Class Members are at an increased risk as they were exposed to benzene. Benzene is a hazardous, life-threatening, toxic substance that is known to cause cancer in humans.

126.    Plaintiff and Class Members are at a significantly increased risk of cancer as they were exposed to Defendant's Products in quantities, and over periods of time sufficient to establish an exposure level that is considered to be hazardous to health, greater than normal background exposure levels, and at levels considered to be sufficient to cause cancer or increase the risk of developing cancer.

127.    The exposure was caused solely and proximately by Defendant's failure to adequately manufacture the Products, Defendant's failure to address discrepancies in batches of the Products during quality control testing, and Defendant's material misrepresentations and other deceptive practices in continuing to claim that the Products were safe for use.

128.    Defendant had a duty to Plaintiff and Class Members to disclose any defect, contamination, impurity, or other potential health hazard known or discoverable by Defendant, and to ensure that the Products were safe, reliable, and non-hazardous for human use—their intended purpose.

129.    As alleged above, Defendant's own negligent acts and omissions resulted in a significantly increased risk of developing cancer for Plaintiff and Class Members. Cancer is a serious disease, causing life-threatening illness and debilitating cellular, genetic, and physical injury. Technology, analytical tools, tests and/or monitoring procedures exist and are readily available to provide for the testing and early detection of cancer in patients. These technologies, tools, tests and/or monitoring procedures are accepted and widely used by the scientific and medical community. These existing scientific methods include, but are not limited to, guaiac-based fecal occult blood test (gFOBT), fecal immunochemical test (FIT), FIT-DNA test, Flexible Sigmoidoscopy, Colonoscopy, and CT Colonography (Virtual Colonoscopy). Early detection of cancer in patients is one of the best, and sometimes the only means to treat cancer such that it does not cause lasting, permanent injury, illness, or death.

130.    Early detection of cancer in patients necessarily allows patients to avail themselves of myriad forms of treatment, each of which is capable of altering the course of the illness, such as bringing the cancer into remission, removal of any malignant tumors, and other treatment to alleviate injury.

131.    The tests and treatments for the early detection and treatment of cancer must be prescribed by a qualified physician, and are conducted according to the latest, contemporary, and widely accepted scientific principles. Because benzene-associated cancer screenings may not be conducted with the frequency necessary to identify cancer in the absence of exposure to benzene, the prescribed monitoring regime is different from that normally recommended in the absence of exposure. Plaintiff and Class Members require more frequent screenings not within the purview of routine medical exams.

132.    The facts alleged above are sufficient or more than sufficient to plead a claim for medical monitoring as a cause of action. Plaintiff seeks, on behalf of herself and members of the Class, injunctive and monetary relief, including compensatory damages for, and the creation of a fund to adequately finance the costs of, medical monitoring procedures (1) to notify and alert all people exposed to benzene as aforesaid of their exposure and the potential consequences, (2) to provide for necessary testing and screening including but not limited to blood tests, physical examinations, imaging, colonoscopies, endoscopies, and other similar methods for examination, biopsies, pathologic, histologic, and oncologic evaluations, oncologic, histologic, surgical and other necessary medical consultations, (3) to provide for necessary medical and surgical procedures for diagnosis and treatment, (4) to provide for all necessary evaluations and treatment, attorneys' fees, costs, interest, and such further relief as the Court deems equitable and just.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, prays for judgment and relief against Defendant as follows:

a) For an order declaring: (i) this is a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the proposed Classes described herein; and (ii) appointing Plaintiff to serve as representative for the Classes and Plaintiff's counsel to serve as Class Counsel;

b) For an order enjoining Defendant from continuing to engage in the unlawful conduct set forth herein;

c) For an order awarding restitution of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

d) For an order requiring disgorgement of the monies Defendant wrongfully acquired by its illegal and deceptive conduct;

e) For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful conduct and illegal conduct;

f) For an award of reasonable attorneys' fees and costs and expenses incurred in the course of prosecuting this action; and

g) For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: November 3, 2022                              Respectfully submitted,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

*/s/ Russell Busch*
Russell Busch (6329500)
Zoe Aaron
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 E 50th Street
New York, NY 10022
Tel: (630) 796-0903
Fax: (865) 522-0049
E-Mail: *rbusch@milberg.com*
E-Mail: *zaaron@milberg.com*

J. Hunter Bryson  *
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC, 27603

Tel: (919) 600-5000
Fax: (919)600-5035
Email: *hbryson@milberg.com*

Nick Suciu III*
Erin J. Ruben*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
Fax:    (865) 522-0049
E-Mail: *nsuciu@milberg.com*
E-Mail: *eruben@milberg.com*

Gary Klinger*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.:    (866) 252-0878
E-Mail: *gklinger@milberg.com*

Alex Honeycutt*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel.:    (865) 247-0080
Fax:    (865) 522-0049
E-Mail: *ahoneycutt@milberg.com*

**Pro Hac Vice* Application Forthcoming

***Attorneys for Plaintiff***